UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JONNYANN R.,

                       Plaintiff,

        v.

ANDREW M. SAUL,[1] Commissioner of
  Social Security,

                       Defendant.
_____

**DECISION
and
ORDER

20-CV-436F
(consent)**

APPEARANCES:      LAW OFFICES OF KENNETH R. HILLER, PLLC
                              Attorneys for Plaintiff
                              KENNETH R. HILLER, and
                              JUSTIN M. GOLDSTEIN, of Counsel
                              6000 North Bailey Avenue, Suite 1A
                              Amherst, New York  14226

                              JAMES P. KENNEDY, JR.
                              UNITED STATES ATTORNEY
                              Attorney for Defendant
                              Federal Centre
                              138 Delaware Avenue
                              Buffalo, New York  14202
                                       and
                              HEETANO SHAMSOONDAR
                              Special Assistant United States Attorneys, of Counsel
                              Social Security Administration
                              Office of General Counsel
                              26 Federal Plaza, Room 3904
                              New York, New York  12078

## JURISDICTION

On April 6, 2020, the parties to this action, consented pursuant to 28 U.S.C. §

636(c) to proceed before the undersigned.  (Dkt. 14).  The matter is presently before the

---

[1] Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

court on motions for judgment on the pleadings filed by Plaintiff on December 11, 2020 (Dkt. 9), and by Defendant on March 11, 2021 (Dkt. 12).

## BACKGROUND

Plaintiff JonnyAnn R. ("Plaintiff"), brings this action under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's applications filed with the Social Security Administration ("SSA"), on October 17, 2016, for Social Security Disability Benefits ("SSDI") under Title II of the Act, and for Supplemental Security Income ("SSI") under Title XVI of the Act ( together, "disability benefits"), from the date of filing until January 14, 2019 when the administrative law judge ("ALJ") granted Plaintiff benefits following an administrative hearing.  Plaintiff alleges she became disabled on May 25, 2016, based on a surgical insertion of a plate and four screws in her neck, torn left rotator cuff, lower back surgery, degenerative disc disease, "problematic discs," carpal tunnel syndrome, depression, sleep issues, elevated cholesterol, incontinency, and trouble controlling her bowels.  AR[2] at 179. Plaintiff's applications initially were denied on January 13, 2017, AR at 81-88, and at Plaintiff's timely request, AR at 93-94, on October 23, 2018, an administrative hearing was held in West Seneca, New York via video conference before ALJ Theodore Kim ("the ALJ") in Falls Church, Virginia.  AR at 32-56 ("administrative hearing").  Appearing and testifying at the administrative hearing were Plaintiff, represented by Diane S. Hinman, Esq., as well as vocational expert Susanna D. Roche ("the VE").

---

[2] References to "AR" are to the CM/ECF-generated page number of the Administrative Record electronically filed by Defendant on October 15, 2020  (Dkt. 8).

On January 14, 2019, the ALJ issued a decision denying Plaintiff's claims until the date of the decision, AR at 12-31 ("ALJ's Decision"), which Plaintiff timely appealed to the Appeals Council. AR at 149-54. On February 10, 2020, the Appeals Council denied Plaintiff's request for review, AR at 1-6, rendering the ALJ's Decision the Commissioner's final decision. On April 13, 2020, Plaintiff commenced the instant action seeking review of the ALJ's Decision awarding Plaintiff disability benefits as of January 14, 2019, but not before.

On December 11, 2020, Plaintiff moved for judgment on the pleadings (Dkt. 9) ("Plaintiff's Motion"), attaching Plaintiff's Memorandum of Law in Support of a Motion for Judgment on the Administrative Record (Dkt. 9-1) ("Plaintiff's Memorandum"). On March 11, 2021, Defendant moved for judgment on the pleadings (Dkt. 12) ("Defendant's Motion"), attaching Commissioner's Brief in Support of the Commissioner's Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local Rule 5.5 on Social Security Cases (Dkt. 12-1) ("Defendant's Memorandum"). Filed on April 1, 2021, were Plaintiff's Reply Arguments (Dkt. 13) ("Plaintiff's Reply"). Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.

## **FACTS**[3]

Plaintiff JonnyAnn R. ("Plaintiff"), born January 31, 1964, was 52 years old as of her alleged disability onset date ("DOD") of May 25, 2016, AR at 16, 161, 176, and 54

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

years old as of January 14, 2019, the date of the ALJ's decision. AR at 28. Plaintiff lives in a house with her husband and teenage son. AR at 37, 41, 189, 376, 381. Plaintiff graduated high school where she attended regular classes, AR at 37, 180, 381, attended one year of college, *id*., but has not completed any specialized job training or vocational school. *Id*. Plaintiff has a driver's license but at present is afraid to drive because of numbness in her toes, and relies on others for transportation. AR at 43, 192. Plaintiff's past relevant work ("PRW") includes as a school bus driver from 1998 until May 24, 2016. AR at 37, 180.

Plaintiff describes her activities of daily living as including light housekeeping such as dusting, vacuuming, and sweeping, laundry, and preparing simple meals. AR at 41, 189, 191-92, 376, 384. Plaintiff's son helps take care of the pet dog. AR at 190. Plaintiff shops for clothing by computer on occasion, AR at 192, but her husband does the grocery shopping. AR at 41. Plaintiff showers twice a week but needs help dressing herself. AR at 376. Plaintiff enjoys watching television, reading, crocheting, and painting, and visits with friends once a month. AR at 193, 376, 384.

It is undisputed that Plaintiff suffers from numerous impairments including, most relevantly to this action, degenerative disc disease of her lumbar spine, herniated cervical disc, and obesity. Plaintiff received primary care through Chautauqua Medical Services – LPP ("CMS"), where she was treated by primary care physician Carl Roth, D.O. ("Dr. Roth") until his retirement in 2017, at which time Plaintiff was treated at CMS by Steven E. Barnes, D.O. ("Dr. Barnes"). AR at 227. In 2005, Plaintiff underwent left shoulder rotator cuff surgery. AR at 381. Also in 2005, Plaintiff injured her neck at work and underwent surgical anterior cervical discectomy and fusion performed by

4

neurosurgeon Lee Guterman, M.D. ("Dr. Guterman"), following which Plaintiff was able to return to work as a school bus driver.  AR at 239, 375.  On May 25, 2016, Plaintiff underwent low back surgery performed by neurosurgeon James G. Egnatchik, M.D. ("Dr. Egnatchik"), who removed two deteriorated discs and implanted two rods at L4-L5, but the surgery did not alleviate Plaintiff's pain in her legs and numbness in her toes, and Plaintiff has not since returned to work.  AR at 38, 209, 260, 264.

In connection with her disability benefits applications, on December 5, 2016, Plaintiff underwent a consultative internal medicine examination with David Brauer, M.D. ("Dr. Brauer"), who diagnosed chronic low back pain, chronic neck pain, left shoulder pain status post rotator cuff repair, hypercholesterolemia, gastroesophageal reflux disease ("GERD"), and anxiety/depression, AR at 378, opining Plaintiff was moderately limited in her ability to push, pull, lift or carry heavy objects, *id*., and markedly limited in her ability to perform activities requiring full or repetitive bending.  AR at 378-79.  On December 28, 2016, Plaintiff underwent a psychiatric evaluation by consultative psychologist Gregory Fabiano, Ph.D. ("Dr. Fabiano"), who diagnosed Plaintiff with an adjustment disorder with depression and anxiety, AR at 384, and recommended cognitive/behavioral therapy to help Plaintiff use effective coping strategies to manage her mood and anxiety-related symptoms.  AR at 384.

## **DISCUSSION**

**1.    Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of

5

any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*.  It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence.  *Id*.  "Congress has instructed . . . that the factual findings of the Secretary,[4] if supported by substantial evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982).  In short, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*."  *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 59 (2d Cir. 2013) (italics in original).  "Under this 'very

---

[4] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'" *Id*., 523 Fed.Appx. at 58-59 (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).

## 2.     Disability Determination

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits.  *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a).  The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC"

which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, see 20 C.F.R. §§ 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied, id., but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy."  Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).  The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008).  All five steps need not be addressed because if the claimant fails to meet the criteria at either of the first two steps, the inquiry ceases and the claimant is not eligible for disability benefits, but if the claimant meets the criteria for the third or fourth step, the inquiry ceases with the claimant eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.

      In the instant case, the ALJ found Plaintiff meets the insured status requirements for SSDI through December 31, 2021, AR at 19, has not engaged in substantial gainful activity since the alleged DOD, id., and suffers from the severe impairments of degenerative disc disease of the lumbar spine with spondylosis, spondylolisthesis, and radiculopathy, obesity, and herniated cervical disc, id., as well as non-severe impairments of mixed hyperlipidemia, GERD, metabolic syndrome, otitis media, history

of left shoulder rotator cuff repair, chronic pain syndrome, and major adjustment disorder with depression or anxiety, *id*. At 19-21, but that Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 21. Despite her impairments, the ALJ found Plaintiff retains the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that Plaintiff can frequently, as opposed to constantly, operate hand controls, reach, push or pull, handle, finger and feel with both upper extremities, occasionally kneel, crouch, stoop, balance, crawl, and climb stairs and ramps, can never climb ladders, ropes and scaffolds, never be exposed to unprotected heights and moving mechanical parts, can tolerate occasional exposure to vibration, is able to understand, carry-out, and remember simple instructions, and make simple work decisions, and would be off-task 10% of the workday. AR at 22-25. The ALJ further found Plaintiff, since May 25, 2016, has been unable to perform her past relevant work ("PRW") as a school bus driver, AR at 26, that prior to the asserted DOD of May 25, 2016, Plaintiff was an individual closely approaching advanced age but by January 14, 2019, Plaintiff's age category changed to an individual of advanced age,[5] *id*., at 25-26, and that given her RFC, age, education, work experience, and ability to communicate in English, with transferability of skills not relevant, was, until the date of the ALJ's decision, *i.e.*, January 14, 2019, able to perform other work existing in the national economy in significant numbers including as an order caller, cashier II, and

---

[5] The ALJ explained that because Plaintiff, upon turning 55 on January 31, 2019, would be in the "advanced age" category, as compared to the lower age category of "approaching advanced age" pertaining to ages 49 through 54, Plaintiff's age was in a "borderline situation" to which the ALJ would not mechanically apply the age categories and, instead, considered Plaintiff for the purposes of the ALJ's decision to be of advanced age as of the date of the ALJ's decision. AR at 25-26.

sales attendant. AR at 25-26. Based on these findings, the ALJ determined Plaintiff is not disabled as defined under the Act from the application date until January 14, 2019, the date of the ALJ's decision, but based on the ALJ's consideration of Plaintiff under the higher age category, was disabled as of January 14, 2019. *Id*. at 28.

Plaintiff does not contest the ALJ's findings with regard to the first three steps of the five-step analysis, but argues that at the fourth step, the ALJ erred in formulating an RFC that is not supported by substantial evidence in the record, Plaintiff's Memorandum at 11-22, and the ALJ"s finding that Plaintiff's subjective complaints are inconsistent with the medical evidence is not supported by substantial evidence in the record. *Id*. at 22-23. In opposition, Defendant argues substantial evidence shows the ALJ properly weighed the medical opinions in developing an appropriate RFC, Defendant's Memorandum at 6-15, the administrative record was complete and adequate to supporting the ALJ's decision, *id*. at 15-17, and substantial evidence establishes the ALJ properly considered Plaintiff's subjective complaints in determining her RFC. *Id*. at 17-20. In reply, Plaintiff argues the ALJ failed to apply the so-called "*Burgess* factors" when weighing the medical opinions of record which was harmful because the opinions of Plaintiff's treating physicians limited Plaintiff to sedentary work in which case application of Medical-Vocational Guidelines Rule 201.14 directs a finding of disabled. Plaintiff's Reply at 1-10. There is no merit to Plaintiff's arguments.

Preliminarily, the court emphasizes that the ALJ's decision grants Plaintiff benefits, albeit not as of Plaintiff's asserted DOD of May 25, 2016, but as of January 14, 2019, the date of the ALJ's decision, and that determination is based on the ALJ's

discretion to consider Plaintiff to be of advanced age, *i.e.*, age 55 or older, three weeks[6] prior to her 55th birthday.  AR at 26.  When considered to be of advanced age, rather than closely approaching advanced age, *i.e.*, ages 50 to 54, based on the RFC limited to work of "light" exertion,[7] at least a high school education, the ability to converse in English, and with PRW that was semi-skilled, but without transferable skills, Rule 202.06 of the Medical Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpt. P, Appx. 2, directs a finding of "disabled."  Plaintiff's argument challenges the ALJ's determination that Plaintiff was capable of working at an exertional level of "light" as opposed to "sedentary" because if Plaintiff were capable of no more than sedentary work, Rule 201.14 dictates a finding of "disabled" even under the lower age category of "closely approaching advanced age."  Accordingly, the court's analysis turns on whether substantial evidence supports the ALJ's determination that Plaintiff had the RFC for light work as otherwise Plaintiff would be able to perform, at most, only sedentary work for which the Grids dictate a finding of disabled regardless of whether Plaintiff is considered to be of advanced age, Rule 201.06, or closely approaching advanced age, Rule 201.14.

---

[6] Although the ALJ's decision states, "the claimant is considered for purposes of this decision to be of 'advanced' age three months prior to her birthday, or the date of this decision," AR at 26 (underlining added), because Plaintiff's birthday is January 31, and the ALJ's decision is dated January 14, 2019, the court considers the word "months" to be a drating error and that the correct temporal period is "weeks."
[7] As relevant here, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).  In contrast, "[s]edentary work involves lifting no more than 10 pounds as a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties."  20 C.F.R. § 404.1567(a).

With regard to Plaintiff's assertion that the ALJ's RFC formulation is not supported by substantial evidence in the record, Plaintiff maintains the ALJ failed to properly weigh the medical opinions of record, and failed to fulfill his duty to develop the record.  Plaintiff's Memorandum at 11-22.  In particular, because Plaintiff filed her disability benefits applications prior to March 27, 2017, the applications are subject to the so-called "treating physician's rule."

Under the "treating physician rule," for disability benefits claims filed, like the instant claim, prior to March 27, 2017, an opinion from a treating medical source is entitled to controlling weight so long as the "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record...."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  *See Crowell v. Comm'r of Soc. Sec. Admin.*, 705 Fed. Appx. 34, 35 (2d Cir. 2017) (treating physician's opinion generally entitled to controlling weight when "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [ ] not inconsistent with other substantial evidence in the case record.") (citations omitted).  Where, however, an ALJ discounts a treating physician's opinion, the ALJ must set forth "good reasons" for doing so.  *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (citing *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004)).  The failure to provide good reasons for rejecting a treating physician's opinion is grounds for remand. *Halloran*, 362 F.3d at 33 ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician opinion and we will continue remanding when we encounter opinions from ALJ's [*sic*] that do not

comprehensively set forth reasons for the weight assigned to a treating physician's opinion."). Further, the opinion of a treating physician is entitled to significant weight where it is supported by medical evidence in the record, and to controlling weight where it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). *See Genier v. Astrue*, 298 Fed.Appx. 105, 108 (2d Cir. 2008) ("If the treating physician's opinion is well-supported by other medical evidence, then it is given controlling weight." (citing 20 C.F.R. 416.927(d)(2))). Treating physician opinions, however, are not determinative and are granted controlling weight only when they are not inconsistent with other controlling evidence. 20 C.F.R. §§ 404.1527(d), 316.927(d); *Halloran*, 362 F.3d at 32 (citing *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)). Further, the assignment of less than controlling weight to a treating physician's opinion is not error if "[s]upported by ample treatment notes, physical examination findings, and [plaintiff's] testimony." *Guerra v. Saul*, 778 Fed.App. 75, 77 (2d Cir. 2019). *See Rusin v. Berryhill*, 726 Fed.App. 837, 839 (2d Cir. 2018) (summary order) (no error in declining to afford controlling weight to the opinion of plaintiff's treating physician when it was inconsistent with his treatment notes and diagnostic observations, the other medical opinion evidence, and plaintiff's reported activities of daily living).

When, however, the treating physician's opinion is not afforded controlling weight, the ALJ is requires to provide "good reasons' for the weight assigned to the opinion, and to "explicitly consider" the four so-called "*Burgess* factors" articulated by the Second Circuit Court of Appeals in *Burgess v. Astrue*, 557 F.3d 117, 129 (2d Cir.

2009), including (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist. Although generally, the ALJ's failure to expressly consider these factors is a procedural error warranting remand, when the court's review of the record demonstrates that "the substance of the treating physician rule was not traversed" the ALJ's decision must be affirmed even when the ALJ did not "explicitly" consider each of the *Burgess* factors. *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (citing *Halloran*, 362 F.3d at 32 (despite the ALJ's failure to "explicitly consider" each of the *Burgess* factors, the ALJ's decision should be affirmed if a "searching review" of the record demonstrates "that the substance of the treating physician rule was not traversed.")). *See Atwater v. Astrue*, 512 Fed.Appx. 67, 70 (2d Cir. 2013) (summary order) ("We require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear."). Here, a "searching review" of the record establishes the treating physician rule was not traversed.

In particular, the ALJ considered the January 23, 2017 and April 24, 2017 opinions of Dr. Egnatchik, Plaintiff's treating neurosurgeon who performed Plaintiff's lower back surgery on May 25, 2016, AR at 24 (citing AR at 389-98), as well as the October 11, 2018 opinion from Dr. Barnes, Plaintiff's primary care physician. AR at 24 (citing AR at 437-38). On January 23, 2017, Dr. Egnatchik examined Plaintiff eight months post "major spinal reconstructive surgery done both anteriorly and posteriorly" on May 25, 2016, stating he was "overall . . . quite pleased with the way Jonny Ann's [computerized tomography] scans look considering where we started." AR at 390. Dr.

Egnatchik continued he "highly" doubted Plaintiff would be able to resume working as a school bus driver and based on Plaintiff's "other limitations," Dr. Egnatchik supported Plaintiff's application for disability benefits.  *Id*.  Dr. Egnatchik next examined Plaintiff on April 24, 2017, when Plaintiff continued to complain about pain in her back and numbness in her legs, AR at 391, but Plaintiff's incisions were well-healed and X-rays of Plaintiff's lumbar spine showed the spinal fusion to be "maturing quite nicely" without "evidence of any instrumentation failure."  *Id*.  Dr. Egnatchik repeated his support for Plaintiff's efforts to obtain social security benefits, opining that Plaintiff was then "and for the foreseeable future unemployable."  *Id*.  The ALJ gave these opinions "little weight" because the opinions were intended as temporary, rather than permanent assessments, the finding of disability is an issue reserved to the Commissioner, and both opinions "are unsupported by a specific function-by-function assessment of the claimant's limitations."  AR at 24.

As the ALJ found, insofar as Dr. Egnatchik stated Plaintiff is disabled from working, AR at 390, 392, 394, 395, such opinions are accompanied by statements indicating Plaintiff's disabled condition is temporary.  *See*, *e.g.*, AR at 395 (Dr. Egnatchik's January 23, 2017 statement that Plaintiff "is to remain temporarily totally disabled until further notice.").  Further, the opinion that a claimant is disabled is reserved to the Commissioner.  20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *see Micheli v. Astrue*, 501 Fed.Appx. 26, 28 (2d Cir. 2012) ("'[a] treating physician's statement that the claimant is disabled cannot itself be determinative.'" (quoting *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999))).  Nor did the ALJ violate the treating physician rule by failing to adopt Dr. Egnatchik's opinions of disability.  Although the ALJ did not "explicitly

15

consider each of the *Burgess* factors," *Halloran*, 362 F.3d at 32, here, "the ALJ's reasoning and adherence to the regulation are clear."  *Atwater*, 512 Fed.Appx. at 70.

In particular, the ALJ references numerous treatment records from Dr. Egnatchik for the treatment period December 7, 2015 through October 31, 2016, including detailed records of Dr. Egnatchik's surgery and follow-up examinations, AR at 23 (citing AR at 243-80 and 388-98), such that any suggestion that the ALJ was unaware of Dr. Egnatchik's status as Plaintiff's neurosurgeon who performed Plaintiff's lumbar fusion surgery and who was also involved in preparing Plaintiff for the surgery and following Plaintiff's progress after the surgery is implausible.  The ALJ also considered Dr. Egnatchik's own review on June 24, 2016, October 7, 2016, and April 24, 2017, of diagnostic imaging tests taken of Plaintiff's spine in follow-up to Plaintiff's lumbar fusion which showed Plaintiff to be "healing well with an intact fusion," "normal postoperative alignment," and "the fusion to be maturing quite nicely" with "no evidence of any instrumentation failure."  *Id*.  AR at 23 (citing AR at 247-48, 252-53, 391).  The ALJ further considered that upon examination on January 23, 2017, despite continuing complaints of pain, Plaintiff was "in mild discomfort" and "neurologically intact in her lower extremities."  AR at 23 (citing AR at 389-90).  Accordingly, the ALJ did not err in giving only limited weight to Dr. Egnatchik's opinions.

The ALJ also did not err in failing to give controlling weight to Dr. Barnes's October 11, 2018 opinion.  Specifically, on a preprinted Medical Assessment of Ability to Do Work form provided by Plaintiff's attorney, Dr. Barnes checked a box indicating, *inter alia*, Plaintiff is unable to perform "light work" requiring up to six hours of standing and walking in an eight-hour workday.  AR at 437.  Although as defined in the regulations,

"light work" may require "a good deal of walking or standing," 20 C.F.R. § 404.1567(b), what constitutes "a good deal" is not defined in the regulations, but in Social Security Ruling 83-10,[8] *Titles II and XVI: Determining Capability to do Other Work – The Medical-Vocational Rules of Appendix 2*, *available at* 1983 WL 31251 (S.S.A. 1983) ("SSR 83-10"). As explained in SSR 83-10, the "primary difference" between sedentary and light work is the increased amount of walking and standing often required by light jobs. 1983 WL 31251, at * 5. Because light work requires "frequent lifting or carrying of objects," with "frequent" meaning "one-third to two-thirds of the time" which equates to approximately six hours in an eight-hour day, and lifting or carrying usually "requires being on one's feet," the frequent lifting and carrying requirement for light work also requires the ability to stand or walk for up to six hours in an eight-hour workday. *Id*. at *5-6. However, as the ALJ observed, AR at 24, Dr. Barnes attributed his opinion to Plaintiff's history of cervical and lumbar surgical procedures despite medical records indicating Plaintiff was healed from her cervical procedure. Moreover, as noted, Discussion, *supra*, at 16, Dr. Egnatchik found Plaintiff's lumbar fusion had healed well. As such, the ALJ considered Dr. Barnes's opinion to be "vague" and without medical support for its rationale. *Id*. Further, despite becoming Plaintiff's treating physician after Dr. Roth retired in 2017, Dr. Barnes only examined Plaintiff one time and, as such, did not have a treating relationship with Plaintiff of sufficient longitude to confer treating physician status on Dr. Barnes. *See Petrie v. Astrue*, 412 Fed.Appx. 401, 405 (2d Cir. 2011) (declining to accord the an examining physician treating physician status where

---

[8] "SSR" refers to Social Security Rulings which are agency rulings "published under the authority of the Commissioner of Social Security and are binding on all components of the Administration. These rulings represent precedent final opinions and orders and statements of policy and interpretations that [the SSA] ha[s] adopted." 20 C.F.R. § 402.35(b)(1).

the physician rendered an opinion after having examined the plaintiff only once or twice, noting "'[t]he opinion of a treating physician is accorded extra weight because the continuity of treatment he provides and the doctor/patient relationship he develops place him in a unique position to make complete and accurate diagnosis of his patient.'" (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1039 n. 2 (2d Cir. 1983))).

Moreover, the ALJ's determination that Plaintiff is capable of light work is supported by Dr. Brauer's consultative opinion. Specifically, after examining Plaintiff on December 5, 2016, Dr. Brauer opined Plaintiff had no limitations to sitting, standing or walking, but was moderately limited as to pushing, pulling, lifting, and carrying heavy objects, and markedly limited as to activities requiring full or repetitive bending. AR at 378. Significantly, "'the opinion of a treating physician is not binding if it is contradicted by substantial evidence, and the report of a consultative physician may constitute such evidence.'" *Camille v. Colvin*, 652 Fed.Appx. 25, 28 (2d Cir. 2016) (quoting *Mongeur*, 722 F.2d at 1039).

Nor did the ALJ err in finding Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." Plaintiff's Memorandum at 22 (quoting AR at 23). As the ALJ explained in detail, AR at 23, Plaintiff's various medical records, treatment records, and such diagnostic imaging reports as X-rays, and CT scans, did not support the severity of Plaintiff's impairments were as Plaintiff claimed, including repeated medical findings that Plaintiff ambulates "with a steady gait and with no assistive devices," AR at 250 (October 11, 2016 examination by Dr. Egnatchik), and "[w]alks with a normal gait for age . . . . [n]o leg weakness or paresthesias ['pins and

needles' sensation]," AR at 402 (July 19, 2018 examination by Dr. Barnes).  See *Corbiere v. Berryhill*, 760 Fed.Appx. 54, 57-58 (2d Cir. 2019) (affirming district court's finding the ALJ's conclusion that the plaintiff's medical impairments could cause the alleged symptoms, but discrediting the plaintiff's testimony regarding the intensity, persistence, and limiting effects of the symptoms to the extent they were inconsistent with the evidence presented).  Further, with regard to Plaintiff's assertion that the ALJ erred in determining Plaintiff was likely to be off task 10% of a workday, a finding which Plaintiff argues is not specifically supported by the record, Plaintiff's Memorandum at 11, because such restriction assesses greater limitations than supported by the record, it is, at most, "harmless error."  *Ellen A. v. Saul*, 2021 WL 1087949, at * 4 (W.D.N.Y. Mar. 22, 2021).

      To summarize, in the instant case, the evidence in the record establishes at most that it is susceptible to more than one rational interpretation, including the ALJ's Decision that Plaintiff is not disabled under the Act prior to January 14, 2019.  See *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."); *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 58-59 (2d Cir. 2013) ("Under this 'very deferential standard of review [applicable to actions challenging an administrative decision on a disability benefits claim],' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'"  (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).  Further, the Supreme Court recently reaffirmed that the threshold for substantial evidence "is not high . . . .  It means – and means only – such relevant evidence as a

seasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, __ U.S. __; 139 S.Ct. 1148, at 1154 (2019) (internal citation and quotation marks omitted). Indeed, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*." *Id*., 523 Fed.Appx. at 59 (italics in original). In the instant case, because the ALJ's decision that Plaintiff could perform a limited range of light work such that Plaintiff was not disabled until reaching advanced age is supported by substantial evidence in the record.

## CONCLUSION

Based on the foregoing, Plaintiff's Motion (Dkt. 9) is DENIED; Defendant's Motion (Dkt. 12) is GRANTED. The Clerk of Court is directed to close the file.
SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:   June 17th, 2021
         Buffalo, New York